**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| KENNETH COOK,<br><br>Plaintiff,<br><br>v.<br><br>TOM HERRERA,<br><br>Defendant. | CIVIL ACTION NO.: 4:24-cv-00179 |

# O R D E R

Presently before the Court is Defendant Tom Herrera's Motion for Partial Summary Judgment (the "Motion") as to Plaintiff Kenneth Cook's claim for past and future medical treatment related to his lower back and his claim for punitive damages. (Doc. 51.) Plaintiff brought this action in the State Court of Chatham County, Georgia, alleging that Defendant negligently failed to stop his vehicle and rear-ended Plaintiff's 18-wheeler on Interstate 95. (Doc. 1-2, pp. 2–3.) The case was removed to this Court, (see doc. 1), and Defendant subsequently filed the at-issue Motion, (doc. 51). For the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion. (Id.)

## BACKGROUND

### I. Factual Background

The Court derives the below facts from the parties' submissions and the summary judgment record. Under Local Rule 56.1, a motion for summary judgment must include a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. All material facts set forth in the

statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party. S.D. Ga. L.R. 56.1. Under Local Rule 56.1, when a fact is undisputed, the Court includes the fact. For disputed facts, the Court reviews the record to determine if a material dispute exists. When the other party's response reflects the record cited more accurately, the Court modifies the proposed fact and cites the record. The Court also excludes immaterial facts, those stated as an issue or legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support. And, where appropriate, the Court includes facts drawn from its review of the record. See Williams v. Wal-Mart Stores E., LP, 661 F. Supp. 3d 1264, 1266 (N.D. Ga. 2023). These facts are undisputed unless otherwise stated.

### A. Plaintiff's Condition and Treatment Before the Collision

Prior to the collision at issue, Plaintiff received medical treatment for back-related ailments beginning as early as 2008.[1] (Doc. 58-1, pp. 1–3.) In 2008, Plaintiff fell from a Mack truck and presented to Baptist Health Hospital with back pain. (Id. at p. 1; doc. 51-3, p. 1.) He was diagnosed with acute lower back pain, and the findings included a pinched nerve and an L5-S1 herniation. (Doc. 58-1, pp. 1–2; doc. 51-3, p. 1.) In 2012, Plaintiff complained to a medical provider of lower back pain, with sharp pain worsened by movement and prior back problems. (Doc. 58-1, p. 2.) In 2013, Plaintiff complained of back pain, numbness, and paresthesia of his left arm. (Id.) In 2016, Plaintiff complained of left thoracic back pain. (Id. at pp. 2–3; doc. 51-6, p. 1.) In May 2021, he

[1] Plaintiff disputes the materiality of certain facts regarding pre-collision ailments. (See doc. 58-1, pp. 1–3.) Facts regarding Plaintiff's pre-collision back ailments are material because Defendant contends that Plaintiff's alleged lower back injuries relate to a preexisting medical condition. (Doc. 51, pp. 11–12.) Although Plaintiff denies the existence of these prior conditions or symptoms at the time of the collision, the facts merely state his medical history and are undisputed. (Doc. 58-1, pp. 1–3.) Accordingly, the Court will consider Defendant's undisputed facts admitted for the purpose of this Motion, so long as they are supported with record citations. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

reported to a medical provider that he had "chronic paresthesias [sic] in both legs," (doc. 51-7), and on October 11, 2021, Plaintiff's medical provider noted that he had a "history of chronic back pain," (doc. 51-8). (See also doc. 58-1, p. 3.) The Court has not been presented with any evidence that Plaintiff complained of or sought treatment for back pain between that October 11, 2021, appointment and the motor vehicle accident eight months later.

**B. Plaintiff's Post-Collision Condition and Treatment**

On June 9, 2022, Plaintiff and Defendant were involved in a motor vehicle accident in Chatham County, Georgia. (Doc. 58-1, p. 1; doc. 51-2.) Five days later, on June 14, 2022, Plaintiff reported to Chanatry Chiropractic with complaints of lower back pain. (Doc. 58-1, p. 3.) During that visit, the chiropractor advised Plaintiff to seek further evaluation at a hospital to "rule out a stroke." (Id. at pp. 3–4; doc. 51-9, p. 1.) On the same day, Plaintiff reported to Baptist Medical Center Jacksonville ("BMC Jacksonville"). (Doc. 58-1, p. 4.) While there, he underwent a lumbar x-ray, which showed "degenerative changes" and "no acute fracture and/or dislocation." (Id.; doc. 51-9, pp. 1–2.) The BMC Jacksonville records also noted that his "symptoms could be explained by high blood sugar." (Doc. 58-1, p. 4; doc. 51-9, p. 2.) Plaintiff continued to receive imaging and treatment for his alleged lower back symptoms by various medical providers, including UF Health Jacksonville Department of Emergency Medicine on June 16, 2022, (doc. 67-4); Chanatry Chiropractic through February 4, 2023, (doc. 67-2, pp. 2–3; see also doc. 67-1, p. 19); and Insite Radiology on August 14, 2023, (doc. 67-5, pp. 2–6). The Insite Radiology records detail the results of Plaintiff's lumbar MRI on August 14, 2023, and compare those results to a prior (post-accident) lumbar MRI dated June 17, 2022, noting disc herniations/extrusions at L4-L5 and L5-S1 and other abnormalities. (Id.; see also doc. 67-6, p. 4.)

On November 8, 2023, Plaintiff went to the Sherban Spine Institute for an initial visit with Dr. Sherban, who noted that Plaintiff's "symptoms are chronic in nature." (Doc. 58-1, p. 5; doc. 51-11, p. 1.) While Plaintiff "admits that those words appear in Dr. Sherban's . . . records," he denies that his ailments "are related to a chronic condition or were not caused by [Defendant's] negligence." (Doc. 58-1, p. 5 (citing doc. 67-1).) On March 20, 2024, Plaintiff underwent several surgical procedures on his lower back at L5-S1. (Id.; doc. 51-11, p. 2; doc. 67-7, p. 3.) The next year, Plaintiff received treatment at Spine, Brain & Joint Institute for lower back pain on June 23, 2025, and August 7, 2025. (Doc. 67-6.) According to Plaintiff's life care planner (who offers no causation opinions), Dr. Sandborn—Plaintiff's treating physician at Spine, Brain & Joint Institute—said that Plaintiff would need medial branch blocks and steroid injections in his lower back for the rest of his life. (Doc. 58-1, p. 5; see also doc. 67-6, pp. 4–5.)

## II. Procedural History

Plaintiff first filed suit in the State Court of Chatham County. (Doc. 1-2.) In the Complaint, Plaintiff brings a claim for negligence and a claim for punitive damages against Defendant. (Id. at pp. 3–4.) Subsequently, Defendant removed the case to this Court, invoking diversity jurisdiction. (Doc. 1.) After the deadline to disclose experts had passed, Plaintiff filed a Motion to Submit Revised Disclosure and Retroactively Apply the Court's Deadline to the expert disclosures for his treating physicians and life care planner, Dr. Afshari. (See generally docs. 42 & 42-1.) Defendant moved to exclude Plaintiff's expert witnesses. (Doc. 44.) The Magistrate Judge granted Defendant's motion in part and excluded expert testimony from any of Plaintiff's treating physicians, including Dr. Sherban. (Doc. 46). Consequently, Plaintiff's treating physicians may only testify "to the facts concerning [their] treatment and observation of Plaintiff," and may not offer any expert opinions, "including opinions about causation, prognosis, the

reasonableness of medical costs, or the need or cost of future medical care." (Id. at pp. 11–12, 14–15.) The only expert testimony that Plaintiff may offer is that of his life care planner, Dr. Afshari. (Id. at p. 6.) According to Plaintiff's expert disclosure for Dr. Afshari, his expert testimony will be limited to "the reasonableness and necessity of both past and future medical treatment related to injuries sustained from the collision" and the reasonableness of the associated costs. (Doc. 42-1, p. 7.) He will not offer an expert opinion as to the causation of Plaintiff's injuries. (See id.; doc. 58-1, p. 5.)

Defendant now files this Motion for Partial Summary Judgment as to Plaintiff's claims for (1) "past and future treatment, expenses related to surgery, and alleged future procedures and injections related to the low back" as well as (2) punitive damages. (Doc. 51.) Plaintiff filed a Response opposing Defendant's Motion as to his medical treatment claims, (doc. 58), and Defendant filed a Reply, (doc. 59).

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337,

1341 (11th Cir. 2011). When the nonmoving party has the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether to grant summary judgment, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citations omitted). Mere speculation does not create a genuine issue of material fact. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotations omitted).

**DISCUSSION**

In his Motion, Defendant contends that there is no evidence of behavior that would give rise to punitive damages and that he is therefore entitled to summary judgment in his favor on that claim. (Doc. 51, pp. 2, 13–14.) Plaintiff's response offers no opposition to Defendant's Motion as to the punitive damages claim. (Doc. 58, p. 1 n.1.) Accordingly, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment on Plaintiff's punitive damages claim. (Doc. 51.)

Next, Defendant seeks partial summary judgment on Plaintiff's negligence claim. He argues that Plaintiff cannot establish that the accident caused him to need "low back surgery and future . . . low back injections and medial branch blocks" because this presents a "specialized medical question" and Plaintiff's anticipated expert medical opinion testimony on causation has been excluded. (Id. at pp. 9, 11; doc. 59, p. 1.) Put another way, Defendant claims that Plaintiff's lower back pain since the accident and resulting medical treatment may not be fully attributable to the collision, but rather, may be related to a preexisting medical condition and, therefore, medical expert testimony must link the accident to the treatment. (Doc. 51, pp. 10–12.) Plaintiff responds that causation can sufficiently be shown through "[his own] testimony, his medical records, and the likely testimony of his treating doctors" and that he is therefore not required to present medical expert testimony. (Doc. 58, pp. 8–16.)

To establish a claim of negligence under Georgia law, a plaintiff must show "the existence of a duty on the part of the defendant, a breach of such duty, causation of the injury alleged, and damages as a result of the alleged breach of duty." Wells Fargo Bank, N.A. v. Jenkins, 744 S.E.2d 686, 687 (Ga. 2013). Georgia recognizes the "egg shell plaintiff" rule, meaning "that a tortfeasor takes a plaintiff in whatever condition he finds him." AT Sys. Se., Inc. v. Carnes, 613 S.E.2d 150, 153 (Ga. Ct. App. 2005) (internal quotations omitted). In other words, no matter how "minor" Defendant may *expect* an injury to be, Defendant "must bear the risk that his liability will be increased" because of Plaintiff's "actual physical condition" at the time of the alleged negligent act. Id. (internal quotations omitted).

Under Georgia law, the general rule in simple negligence cases is that "plaintiffs need not produce expert evidence on causation." Cowart v. Widener, 697 S.E.2d 779, 784 (Ga. 2010) (citing Self v. Exec. Comm. of the Ga. Baptist Convention of Ga., Inc., 266 S.E.2d 168, 169 (Ga.

1980)). "Where the causal link between the defendant's conduct and the [plaintiff's] injury can be determined by a lay jury without expert guidance, no expert evidence need be produced to defeat a defense motion for summary judgment." Id. at 785. In fact, "most 'medical questions' relating to causation are perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony." Id. (stating that "whether an automobile collision caused a backache later the same day is not the type of medical question that requires expert testimony").

That said, expert evidence is required where, to decide whether the defendant's conduct caused the plaintiff's injury, "a lay jury would have to know the answers to one or more 'medical questions' that . . . can be answered accurately only by witnesses with specialized expert knowledge." Id. at 786. In other words, expert evidence is required where determining causation involves answering "specialized medical questions." Id. Such specialized medical questions "may arise in cases in which a plaintiff is alleged to have a preexisting medical ailment." Edwards v. Nelson Bros., LLC, No. 1:23-CV-04213, 2025 WL 3222785, at *4 (N.D. Ga. Jan. 31, 2025). "A causal connection, requiring expert medical testimony, must be established where the 'potential continuance of a disease' is at issue." Jordan v. Smoot, 380 S.E.2d 714, 715 (Ga. Ct. App. 1989) (citing Eberhart v. Morris Brown Coll., 352 S.E.2d 832, 834 (Ga. Ct. App. 1987)). However, the "preexisting condition rule" only applies "where there is continuity in the condition; it does not apply in situations where the preexisting condition has subsided prior to the occurrence of the tort." Calhoun v. Wal-Mart Stores E., LP, No. 1:14-CV-2581, 2017 WL 9362708, at *4 (N.D. Ga. July 24, 2017) (quoting Bruce v. Classic Carrier, Inc., No. 1:11-CV-01472, 2014 WL 1230231, at *6 (N.D. Ga. Mar. 24, 2014)) (internal quotations omitted).

In Cooper v. Marten Transport, Ltd., the Eleventh Circuit Court of Appeals addressed a case with similar facts to those here, and the court's analysis provides compelling guidance. 539 F. App'x 963, 968 (11th Cir. 2013) (unpublished). In that case, following a low-speed car accident, the plaintiffs had been treated for back pain and ultimately underwent surgery. Id. at 964. Both plaintiffs had histories of back pain and degenerative back conditions that had been compounded by obesity and a different car accident the previous year. Id. at 966. The defendants claimed that, given their preexisting conditions, the plaintiffs were required to provide expert testimony to prove alleged causation of their back injuries and subsequent need for surgery. See id. The Court of Appeals observed that "Georgia law allows the factfinder to draw a causal inference based on temporal proximity between an accident and an injury." Id. at 968. Thus, it found that "[w]hether the [plaintiffs] suffered new or aggravated back problems shortly after a low-speed collision with a tractor trailer is the type of question a lay jury could decide based on common knowledge." Id. As a result, the Eleventh Circuit reversed the district court's grant of summary judgment to the defendants because the defendants' "evidence that the [plaintiffs'] injuries may have been the result of preexisting conditions" simply "created a dispute of material fact that the district court was not authorized to resolve at the summary judgment stage." Id.

Here, there is sufficient non-expert evidence to require the denial of Defendant's request for summary judgment. The evidence, viewed in the light most favorable to Plaintiff, does not establish the necessary "continuity" in the Plaintiff's condition here. There is no evidence that Plaintiff had complained of or sought treatment for back pain in the eight months preceding the accident. While perhaps Plaintiff's back pain continued over those eight months, Defendant has not pointed to any evidence to show as much. Nor has Defendant pointed to any evidence that, before the accident, Plaintiff had undergone—or had been recommended to undergo—the types of

treatments that he has undergone since the accident and that he has been recommended to undergo in the future. Additionally, the undisputed evidence supports a determination that the onset of Plaintiff's at-issue symptoms occurred close in time to the accident. The medical records show that Plaintiff presented to a chiropractor with complaints of lower back pain five days after the accident and that, afterward, he repeatedly complained of and sought treatment for that pain. Accordingly, a lay jury must weigh the evidence to decide, based on common knowledge, whether Plaintiff suffered a new or aggravated back problem requiring the at-issue treatment.

The denial of summary judgment under these facts aligns with myriad decisions by Georgia courts and federal courts applying Georgia law in cases with analogous facts. Those courts have repeatedly concluded that the lay jury may and should determine whether an accident caused a plaintiff to suffer new or aggravated injuries or whether, instead, the injuries resulted from a preexisting condition. See, e.g., Cox v. Rewis, 429 S.E.2d 314, 317 (Ga. Ct. App. 1993) (holding that expert evidence was not required for aggravation of carpal tunnel symptoms where plaintiff's prior symptoms had ceased after treatment and did not recur until soon after the collision later that year, and noting that the "jury did not need expert evidence to find that although the automobile accident did not cause the carpal tunnel problems, it aggravated them"); Sims v. Kroger Co., No. 2:22-cv-101, 2023 WL 6373898, at *4 (N.D. Ga. Sep. 6, 2023) ("Neither the fact that [the plaintiff] previously suffered from sciatica or was subsequently injured in a car crash transform this case from a fairly straightforward personal injury case to something more complex requiring expert testimony. . . . [A] jury is more than capable of considering whether [the plaintiff's] sciatica pain continued or abated during that time and determining whether a condition [the plaintiff] suffered from years ago is the cause of, or a contributing factor to, her asserted injuries here."); Adams v. Heinrichs, No. 1:20-cv-4899, 2022 WL 4332059, at *4–5 (N.D. Ga. Sep. 19, 2022) ("On one hand,

there is lay testimony in the record regarding the facts of the Accident and [the plaintiff's] subsequent symptoms and medical treatment. A jury could conclude that a causal connection exists between [the plaintiff's] accident and his injuries based on temporal proximity. On the other hand, there is significant evidence in the record of preexisting conditions that bear directly on [the plaintiff's] claim of injury. The jury may well need the assistance of experts to determine whether the accident caused new or aggravating injuries. Georgia law, however, views this issue as a question of disputed fact and tasks the jury, not the judge, with weighing the facts and deciding whether the plaintiff has carried the burden on causation."); Jones v. Kroger Co., No. 1:19-cv-3271, 2021 WL 2548084, at *5 (N.D. Ga. Mar. 2, 2021) ("After review, the Court finds that summary judgment as to causation is not appropriate at this time, as Plaintiff's testimony provides some evidence that his prior back pain condition had subsided prior to the June 2017 incident, i.e., his testimony that the 2005 surgery relieved the pain in his back and that he was no longer receiving back pain treatment prior to June 2017."); see also Edwards, 2025 WL 3222785, at *4; Veasy v. Austin, No. 1:20-CV-02985, 2021 WL 8998909, at *7 (N.D. Ga. Dec. 8, 2021).[2]

Ultimately, the Court does not opine on the strength of Plaintiff's claims or theory of causation. Plaintiff, however, has presented sufficient evidence to create a genuine dispute of material fact as to causation of the need for the previous surgical procedures and the recommended future procedures. The temporal proximity of the collision and the apparent onset of Plaintiff's

[2] Defendant's reliance, in his initial brief, on this Court's Order in Gugliuzza v. Swift Transportation Co. of Arizona, LLC, No. 4:21-cv-140, 2024 WL 4593865 (S.D. Ga. Oct. 28, 2024), is misguided and unpersuasive. (Doc. 51, pp. 12–13.) As Plaintiff later admitted in his Response, that Order did not involve a motion for summary judgment and the plaintiff in that case "did not dispute that he needed expert testimony linking his future medical treatment to the collision in order to introduce evidence of his anticipated future medical needs and expenses." (Doc. 58, p. 13 n.3 (quoting Gugliuzza, 2024 WL 4593865, at *4).) As the parties were operating under a shared belief that the testimony was necessary, the Court offered no analysis, and made no determination, on whether such expert testimony was necessary under the facts of that case.

symptoms, as well as the nature of his symptoms and subsequent medical treatments, would allow a lay jury to draw conclusions about causation without needing expert medical testimony. See Hutcheson v. Daniels, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997); Shepp v. Custom Cartage, Inc., No. 1:20-cv-02722, 2022 WL 1664555, at *7 (N.D. Ga. May 25, 2022). Accordingly, the Court **DENIES** Defendant's Motion for Partial Summary Judgment as to Plaintiff's claims for past and future treatment, expenses related to surgery, and alleged future procedures and injections related to the lower back.

**CONCLUSION**

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Partial Summary Judgment. (Doc. 51.) Specifically, the Court **GRANTS** Defendant summary judgment on Plaintiff's punitive damages claim. However, the Court **DENIES** Defendant's request for summary judgment as to Plaintiff's claims for past and future medical treatment related to the lower back.

**SO ORDERED**, this 24th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA